SALTER, J.
 

 The appellant, personal representative of her father’s estate, appeals a summary judgment in favor of the decedent’s wife.
 
 [1]
 
 The issue before the probate court was to determine the parties’ claims of ownership of Conti-Tech Investments Holdings Limited, a company incorporated in the British Virgin Islands (BVI). Ownership interests in Conti-Tech were allegedly evidenced by “bearer” shares. The probate court granted summary judgment because the personal representative apparently could not controvert the second wife’s affidavit attesting that “I am the surviving spouse of [the decedent]” and “I am in possession of all of the bearer shares for the British Virgin Islands company Conti-Tech Investments Holdings Limited.”
 

 Having identified a number of significant legal and factual questions that remain unanswered, however, we reverse the summary judgment and remand for additional proceedings. Because the summary judgment order included a provision vacating an earlier order freezing a Merrill Lynch account in the name of Conti-Tech, this ruling also reinstates that order pending further ruling by the trial court, and effective immediately.
 

 The Parties’'Claims
 

 Legal disputes between a decedent’s heirs from a first marriage and the decedent’s second wife are not uncommon. Such a dispute acquires another quantum level of complexity, however, when the bearer shares of an offshore corporation (controlling a substantial Miami securities account) are the object of the tug-of-war.
 

 The decedent, Ronald Griem, operated several profitable businesses in Central
 
 *723
 
 and South America through the 1990⅛. In December 1999, he formed Conti-Tech in BVI. He then opened an account in the name of Conti-Tech at the Merrill Lynch office in Miami. By the time of Mr. Griem’s death in October 2005, the account was substantial. His last will, executed in 2000, did not specifically address the disposition of the Conti-Tech bearer shares or the assets held in the Conti-Tech securities account in Miami. That will identified Mr. Griem’s two daughters as the only beneficiaries.
 

 Following Mr. Griem’s death, the appellant and the Merrill Lynch officer who managed the Conti-Tech account were shocked to learn that the appellee claimed: (a) to have married Mr. Griem in 2002; (b) to have received the Conti-Tech shares as a gift from him in 2003; and (c) to have the exclusive right to control Conti-Tech and its Miami securities account. The daughters’ investigation indicated that the appellee was a “secretary/assistant” living in a separate residence from that of then-father. The decedent’s second wife and the two daughters were immediately at loggerheads.
 
 [2]
 

 The dispute seemed simple enough on its face. The appellee claimed to be the decedent’s widow, to have been given the bearer shares some two years before Mr. Griem died, and to have the exclusive right to control the Conti-Tech account. The appellant, as personal representative under the last will and testament, claimed that Mr. Griem agreed to marry the appel-lee “in order to assist him in obtaining his immigration status in the United States,” and that Mr. Griem and the appellee had always lived separate and apart. Based on the Merrill Lynch records and various BVI documents found among Mr. Griem’s records, the appellant alleged that the appel-lee had in fact obtained possession of the Conti-Tech bearer shares in the days or hours
 
 after
 
 Mr. Griem died.
 

 The BVI Incumbency Certificates
 

 The appellant attached to her affidavit a certificate of incumbency for Con-ti-Tech signed June 22, 2000, by the BVI registered agent.
 
 [3]
 
 It confirmed an incorporation date in 1999, valid existence under the laws of BVI, and six named directors — Mr. Griem and his five grandchildren. The certificate did not identify any shareholders. The appellant also attached to her affidavit copies of invoices addressed to the decedent in 2006 and 2007 for annual administrative fees charged by Conti-Tech’s registered agent in BVI.
 

 In opposing the motion to freeze Conti-Tech’s Merrill Lynch account, however, the appellee submitted an affidavit relating that BVI “performed a lengthy investigation concerning the ownership of the Certificates and now recognizes [appellee] as the sole owner, director and officer of Con-ti-Tech.” To support this statement, the appellee attached to the affidavit a certificate of incumbency from the BVI registered agent signed in April 2007. The certificate confirms that Conti-Tech was
 
 *724
 
 duly incorporated and still validly existing under BVI law, lists the appellee as the only current director (but with a date of appointment over seven months
 
 after
 
 Mr. Griem’s death), and sets forth the following shareholder information:
 

 CURRENT SHAREHOLDERS
 

 NAMES NO. OP SHARES
 

 Bearer 1
 

 Bearer 1
 

 Bearer 1
 

 Bearer 1
 

 Bearer 1.
 

 Because copies of the alleged-bearer share certificates are not themselves a part of the record, it is not possible at this point to confirm that the appellee actually and physically possessed the shares and was the “bearer” referred to in the 2007 incumbency certificate or — and this is the real point — at the time of Mr. Griem’s death.
 

 Bearer Shares Under the BVI Bn,siness Companies Act
 

 The appellee relies on section 673.2011(1), Florida Statutes (2005), which states, “[I]f an instrument is payable to bearer, it may be negotiated by transfer of possession alone.” The Uniform Commercial Code Comment 1 to this provision in effect in Florida states:
 

 [I]f an instrument is payable to bearer and it is stolen by Thief or is found by Finder, Thief or Finder becomes the holder of the instrument when possession is obtained. In this case there is an involuntary transfer of possession that results in negotiation to Thief or Finder.
 

 Fla. Stat. Ann. § 673.2011, cmt. 1 (West 2005).
 

 This reliance, however, is misplaced. Under the UCC, “instruments” are unconditional promises or orders to pay a fixed amount of money and are addressed in Article 3 (chapter 673 of the Florida Statutes), as distinguished from “securities,” addressed in Article 8 (chapter 678 of the Florida Statutes). The shares in Conti-Tech are securities. Under section 678.1011, the local law of the issuer’s jurisdiction, BVI, governs claims regarding transfer of the Conti-Tech shares.
 

 The appellee next argues that section 55 of The BVI Business Companies Act, 2004,'
 
 [4]
 
 supports her position that possession of the Conti-Tech shares absolutely determines ownership: “Subject to Divison 5, a bearer share is transferred by delivery of a certificate relating to the share.” The appellee did not attach, however, “Division 5” or other pertinent provisions of the Act to her brief with section 55. Section 38 of the Act specifies that a company has no power to issue a bearer share unless expressly authorized to do so by its memorandum of association, analogous to a Florida corporation’s articles of incorporation. “Division 5” referred to above consists of sections 67 through 77 of the Act and is entitled “Immobilisation of Bearer Shares.” These sections require that bearer shares be held only by an “author-ised custodian” or a “recognised custodian”; otherwise the bearer shares are “disabled” and “any transfer or purported transfer of an interest in the bearer share is void and of no effect.”
 
 [5]
 

 The apparent intention of these provisions is to permit the ready and anonymous transfer of “bearer” shares through
 
 *725
 
 an intermediary (custodian) approved by tbe BVI Financial Services Commission, but in a manner requiring the “bearers” to provide “the full name of the beneficial owner of the bearer share” and “the full name of any other person having an interest in that share.” Act, § 71. These measures seem designed to document share transfers and ownership for bearer shares so that thefts, losses, and counterfeit certificates can be avoided (or at least investigated).
 

 Issues on Remand
 

 These provisions of BVI law and additional features of U.S. tax law raise serious questions regarding the appellee’s bare-bones affidavit and selective recitation of BVI law. Simply stated, the mere possession of these BVI share certificates does not immunize the appellee from investigation or claim by the personal representative. The appellee’s affidavit raises more questions than it answers: since Conti-Tech had a U.S. securities account, did it file U.S. income tax returns in 2003, 2004, and 2005, potentially providing evidence linking the company to its shareholder? If Conti-Tech’s shareholder received any part of its income, would that not have been disclosed on his or her U.S. income tax return?
 
 [6]
 
 Did Conti-Teeh’s memorandum authorize bearer shares? Wouldn’t Merrill Lynch, Miami, have required a copy of the memorandum as part of the account-opening documentation for Conti-Tech’s securities account? Wouldn’t Con-ti-Tech’s registered agent and the depositary custodians have records revealing the beneficial holders and transfers? How could Becker have obtained her appointment as director effective over seven months after Mr. Griem’s death unless she delivered documentary evidence of her ownership of the shares to the registered agent of Conti-Tech before that? Does the registered agent have other certificates evidencing transfers of ownership or custodians in effect before Mr. Griem’s death?
 
 [7]
 

 Possession is not, as the appellant’s brief said in summarizing the appellee’s position, “ten tenths of the law” for bearer shares in offshore companies. Possession is but one indication of ownership, and we are concerned that the parties failed to present pertinent law and evidence to the probate court regarding other important indicia of ownership. Though some of the appellant’s affirmative defenses and portions of her affidavit seem conclusory, we are left in grave doubt by the paucity of substantiation and rebuttal evidence presented by the appellee.
 
 [8]
 

 On remand, it may be demonstrated that all these paper trails are cold or unavailing, or contemporaneous documents may be unearthed to answer the questions that the decedent can no longer answer. In
 
 *726
 
 prior probate cases involving contending claims of ownership of readily-portable personal property owned before death by a decedent and after death (and under disputed or questionable circumstances) held by another, we have held that the probate court has inherent jurisdiction to help the personal representative marshal and preserve the property pending a determination of ultimate ownership as of the date of death.
 
 Estate of Barsanti v. Cypen,
 
 773 So.2d 1206 (Fla. 3d DCA 2000);
 
 see
 
 § 733.607, Fla. Stat. (2005). Another Florida appellate court has agreed with the analysis and result in
 
 Barsanti
 
 in a second case involving bearer shares.
 
 See Markowitz v. Merson,
 
 869 So.2d 728 (Fla. 4th DCA 2004).
 

 Conclusion
 

 The probate court apparently concluded, based principally on incorrect and incomplete information supplied by the ap-pellee, that Florida law relating to “instruments” and BVI law relating to bearer shares, controlled as a matter of law. In actuality, Florida law relating to “securities” controls and subjects this ownership dispute to BVI law and the Act. The Act includes numerous provisions and requirements for documentation that may nullify or support the appellee’s claim that mere possession of the bearer shares is disposi-tive.
 

 On remand, to the extent this has not already occurred (and the record does not indicate that it has occurred), additional discovery should be allowed so that the parties can disclose to each other Mr. Griem’s and the appellee’s federal income tax returns,
 
 [9]
 
 communications with the BVI registered agent or any custodians, and any pertinent communications with Merrill Lynch regarding Conti-Tech, the shares, and the appellee’s alleged ownership of the shares.
 

 The prior order regarding Merrill Lynch account 748-07A44 and any other Conti-Tech accounts is reinstated, effective immediately, by virtue of our reversal of the order granting summary judgment. That order regarding the Merrill Lynch account will now also apply to any proceeds of the Merrill Lynch Conti-Tech account (and any other Conti-Tech accounts) in the possession, custody, or control of the appellee pending a final adjudication of the competing claims of ownership between the Estate and the appellee.
 

 The order granting summary judgment is reversed, and the adversary proceeding is remanded for further proceedings consistent with this opinion.
 

 [1]
 

 . The appellee maintains that she is the second wife of the decedent and therefore the stepmother of the appellant. The appellant, another daughter of the decedent, and several grandchildren were unaware at the time of the decedent’s death that he had remarried.
 

 [2]
 

 . The daughters’ affidavits related that the appellee initially refused to provide the location of the funeral home so that the daughters could visit their father’s body. When the ap-pellee did furnish that information and made arrangements to meet the daughters at the funeral home, they were met instead by a process server and petition for administration seeking to have the appellee appointed as the personal representative.
 

 [3]
 

 . The record discloses no dispute regarding the genuineness or authenticity of the certificate. The appellee's opposition to the appellant’s motion to freeze the Merrill Lynch account includes a nearly-identical form of certificate signed in April, 2007, but reporting the appointment of Anita Becker as sole director as of June 8, 2006, and listing as "shareholders” five unidentified “bearers,” each holding one share.
 

 [4]
 

 . Referred to in this opinion as the ''Act” and accessible through the BVI Financial Services Commission’s "Legislation Library.” http:// www.bvifsc.vg (follow “Legislation Library” hyperlink; then follow "Registry of Corporate Affairs" hyperlink). Because of certain transition provisions and the apparent incorporation of Conti-Tech under an earlier BVI law, the parties will want to provide
 
 all
 
 of the applicable provisions to the probate court on remand.
 

 [5]
 

 . Act, §§ 68(1), 70(1).
 

 [6]
 

 . If the appellee and Mr. Griem filed separate, accurate U.S. income tax returns, it would seem that those returns would be probative regarding the alleged 2003 gift and the state of ownership in December 2005, following Mr. Griem's death.
 

 [7]
 

 . We recognize the difficulties in obtaining discovery from BVI-based entities. We see no reason, however, why the probate court could not direct the appellee and appellant to jointly instruct those entities to provide copies of pertinent records to the parties. Copies of the pertinent Internal Revenue Service and Merrill Lynch records should also be readily available if the parties cooperate and the court sanctions any recalcitrance to provide the necessary consents.
 

 [8]
 

 .The appellant was also less than innocent in her attempt to obtain control of the Conti-Tech securities account. Other counsel formed a Delaware company with the same name and then caused that company to attempt intervention in the adversary proceeding. The probate court correctly denied that gambit.
 

 [9]
 

 . The probate court can of course allow the parties to redact those portions of their tax returns that have no relevance whatsoever to the possession, ownership, or control of the Conti-Tech shares.